IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. |
| Plaintiff, | |
| v. | **UNITED STATES' COMPLAINT FOR PERMANENT INJUNCTION** |
| RODNEY GERALD RICHTER, | |
| Defendant. | |

The United States of America, by Jennifer Klemetsrud Puhl, Acting United States Attorney for the District of North Dakota, and Matthew D. Greenley, Assistant United States Attorney, hereby sues Defendant RODNEY RICHTER, ("Defendant") and alleges as follows:

## INTRODUCTION

1. Beginning at least as early as June 2020, Defendant, who was originally a victim of a romance scam, began facilitating the movement of fraud proceeds through checks, wire transfers, purchases of Bitcoin, and mailing cash. In February 2023, shortly after being formally warned to stop facilitating these schemes, Defendant attempted to deposit into his own account $95,000 in fraudulent checks drawn on the account of FM Title, a commercial and residential real estate closing, escrow and abstract service company.

2. The United States seeks to prevent continuing and substantial injury to victims of this fraudulent scheme by bringing this action for a permanent injunction and other equitable relief under 18 U.S.C. § 1345 to enjoin the ongoing commission of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action under 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331 and 1345.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1).

## PARTIES

5. Plaintiff is the United States.

6. Defendant is a resident of West Fargo, North Dakota. Defendant engaged in, and continues to engage in, the conduct described in this Complaint from within the District of North Dakota.

## FRAUDULENT SCHEME

7. Since at least as early as 2020, Defendant has participated in fraudulent check schemes in which the Defendant deposits and/or withdraws victim funds on behalf of individuals engaged in perpetrating mail fraud and wire fraud.

8. Richter was a realtor in the Fargo, North Dakota area for many years and used the services of FM Title approximately 20 to 30 times over the course of his career.

9. FM Title was notified in February 2023 of possible fraudulent activity associated with an FM Title account at Cornerstone Bank in Fargo, North Dakota. The president of FM Title learned that Defendant had attempted to deposit two checks drawn on the FM Title account, one for $25,000 the other for $70,000. The Defendant attempted to deposit the checks into his personal account at Town and Country Credit Union ("TCCU").

10. On February 13, 2023, Defendant deposited the $25,000 check into his personal account at TCCU drawn from an account titled "Rodney Richter Exp Realty" at Cornerstone Bank. Although the check was purportedly drawn on an account titled Rodney Richter Exp Realty, the account number belonged to FM Title.

11. Two hours after depositing a fraudulent $25,000 check, the Defendant went to a different TCCU branch in Fargo, North Dakota, and requested a $20,000 cashier's check be drawn on his account made payable to Rodney Richter RE: RGR Enterprises, LLP.

12. On February 14, 2023, Defendant deposited the $20,000 cashier's check. He also deposited a check in the amount of $70,000 into his TCCU account. The $70,000 check was drawn on the same Cornerstone Bank account as the $25,000 check on February 13. The Defendant withdrew $20,000 cash.

13. On February 15, 2023, the Defendant initiated a $40,000 wire from a TCCU branch in Fargo, North Dakota. The Defendant requested the wire to be sent to an account in the name of James E. McKnight. That wire was stopped due to suspicious activity, nevertheless, the Defendant successfully withdrew $10,000 cash from his account.

14. One year later, in January 2024, the Defendant attempted to use the same FM Title account to send $500 to his Discover credit card.

15. Then in February 2024, TCCU advised an FBI special agent that the Defendant advised TCCU that he was anticipating a $33,000 deposit but that he would first have to pay $700 to receive the funds.

16. Based on the fraudulent banking activity, an FBI special agent asked the Defendant to meet him at the United States Attorney's Office (USAO) in Fargo, North Dakota on April 9, 2024. Although the Defendant initially agreed to the interview, after it was rescheduled once at the request of the USAO, the Defendant stopped communicating with the special agent and did not come to the USAO.

## DEFENDANT'S KNOWLEDGE OF FRAUD

17. Upon information and belief, the United States alleges that Defendant has knowledge that his conduct facilitates a fraud scheme.

18. On October 26, 2022, the Fargo FBI Resident Agency received a lead from the Baltimore FBI field office to interview and serve a "money mule warning letter" to the Defendant. At the time, the Defendant was suspected of being an unknowing money mule and a victim of a romance scam.

19. During a December 20, 2022, interview with the FBI, Defendant admitted to conducting an online romance with a person he knew as Angel Hernandez, from October 2020, through October 2022. The Defendant said that Angel Hernandez would regularly send checks through the mail to the Defendant who would then deposit the checks into various bank accounts. The Defendant then used the money from the checks to pay bills, wire money, and send gift cards all on Angel Hernandez's behalf.

20. At the conclusion of the December 20, 2022, interview, two FBI special agents admonished the Defendant not to partake in the money mule activity. The special agents asked the Defendant to review and then to sign a money mule warning letter.

21. The money mule warning letter stated, (in part):

4

Some fraudulent schemes involve criminals who falsely represent themselves as someone else, in order to trick victims into sending money via wire transfer to an identified pre-determined account (e.g., your bank account).  The criminal may ask the account holders, such as yourself, to "process payments", "transfer funds", or "re-ship products" to facilitate the movement of money obtained through fraud from victims to the criminals.  These requests may be masqueraded as work from home, secret shopper opportunities, or an online romance.

Under certain circumstances, knowingly engaging in a financial transaction that involves funds derived from illegal activity may violate the federal money laundering laws, even if you had no involvement in the underlying criminal activity.  Under certain circumstances, you may also have a legal obligation to inquire about the source of the funds and may not avoid legal responsibility by being willfully blind to the source of funds.  A knowing and intentional violation of the money laundering laws may result in criminal prosecution and seizure of the property that is found to be tainted by illegal funds.  By agreeing to engage in such transactions, you may also be facilitating a fraudulent scheme and assisting the perpetrators of the scheme.

22. On January 6, 2023, the Seattle FBI office sent a lead to the Fargo office to have the Defendant interviewed a second time.  The same special agents interviewed the Defendant a second time on January 12, 2023.  The Defendant was asked about a business called Clark Associated LLC, but the Defendant said he did not remember specific details about transactions associated with it.

23. Additionally, and also during the January 12, 2023, interview, the Defendant told special agents that he had approximately $200,000 in one of his bank accounts which was wired from a Minneapolis, Minnesota beer company.  The Defendant said he did not know why the funds were deposited in his account, that he had no interaction with the business, and he said he could not access the funds because they were frozen pending an investigation.  The special agents advised the Defendant that the funds were likely a product of fraud.

24. Despite being warned about the above frauds in December 2022 and January 2023, the Defendant continued to participate in fraud schemes by depositing fraudulent checks in his account in February 2023.

25. On or about February 6, 2025, the Defendant was approached by an FBI agent and the undersigned AUSA with respect to this civil complaint for an injunction. The Defendant stated that he had been in contact with certain individuals by text, email, and various instant messaging platforms over several years. The Defendant said that the individuals engaged in lots of written communication and that they often wanted money from the Defendant. The Defendant said he was still being contacted by the same individuals as recently as January 2025.

## HARM TO VICTIMS

26. Victims suffered financial losses from the fraud schemes facilitated by the Defendant.

27. Upon information and belief, the scheme disproportionately affects elderly victims. The Defendant himself is approximately 77 years old.

28. Town and Country Credit Union lost at least $28,926.18 due to the Defendant's fraud.

29. From February 13, 2023, to February 15, 2023, alone, the FBI tallied total losses of over $200,000 facilitated or caused by the Defendant. The Defendant admitted to participating in check schemes as early as 2020 and continued to participate in fraudulent transactions into 2024.

30. Absent injunctive relief by this Court, Defendant's conduct will continue to cause injury to victims.

## COUNT I

(18 U.S.C. § 1345 – Injunctive Relief)

31. The United States re-alleges and incorporates by reference Paragraphs 1 through 29 of this Complaint as though fully set forth herein.

32. By reason of the conduct described herein, Defendant violated, is violating, and is about to violate 18 U.S.C. § 1343 (Wire Fraud) by facilitating a scheme and artifice to defraud and obtain money or property by means of false or fraudulent representations with the intent to defraud, and, in doing so, used interstate or foreign wire communications.

33. Upon a showing that the Defendant is committing or about to commit mail or wire fraud, the United Stats is entitled, pursuant to 18 U.S.C. § 1345, to seek a permanent injunction restraining all future fraudulent conduct and to any other action that this Court deems just and proper to prevent a continuing and substantial injury to victims.

34. As the result of the foregoing, the Court should enjoin Defendant's conduct under 18 U.S.C. § 1345.

WHEREFORE, Plaintiff, United States of America, respectfully requests the following relief:

A. That the Court issue a permanent injunction, pursuant to 18 U.S.C. § 1345(3), ordering that the Defendant is restrained from engaging, participating, or assisting in any money laundering, money transfer business, or fraudulent check scheme; and,

B. That the Court order such other and further relief as the Court shall deem just and proper.

Dated: April 8, 2025

                              JENNIFER KLEMETSRUD PUHL
                              Acting United States Attorney

                 By:   /s/ *Matthew D. Greenley*
                         MATTHEW D. GREENLEY
                         Assistant United States Attorney
                         MN Bar ID 034252X
                         655 First Avenue North, Suite 250
                         Fargo, ND  58102-4932
                         (701) 297-7400
                         matthew.greenley@usdoj.gov
                         Attorney for United States